**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE J.,[1] | : | Case No. 2:25-cv-00964 |
| Plaintiff, | : | |
| vs. | : | District Judge Edmund A. Sargus<br>Magistrate Judge Peter B. Silvain, Jr. |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Nicole J. brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record. (Doc. #7).

## I. **Background**

The Social Security Administration provides DIB and SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22−01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

"substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469−70.

In the present case, Plaintiff applied for DIB and SSI in July 2022, alleging disability beginning January 28, 2020, due to several impairments, including stroke, lower back pain, numbness in right toes and right hip, migraines, memory problems, depression, and anxiety. (Doc. #7-6, *PageID* #387). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Jeffrey Hartranft on May 1, 2024. (Doc. #7, *PageID* #s 78−112).

Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 28, 2020, the alleged onset date.

Step 2: She has the following severe impairments: degenerative disc disease with radiculopathy; stroke; migraine headaches; obesity; and unspecified depressive disorder.

Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability to perform "light work… except occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and avoiding workplace hazards such as unprotected heights and

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

> machinery. Mentally, [Plaintiff] is capable of routine and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes; and she can have occasional interaction with the general public, co-workers, and supervisors."
>
> She is unable to perform her past relevant as a nurse's aide.

Step 5: Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers that Plaintiff can perform in the national economy.

(Doc. #7, *PageID* #s 37−56). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 28, 2020, though the date of the decision, June 17, 2024. *Id.* at 56−57.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7, *PageID* #s 31−64), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745−46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546−47 (6th Cir. 2004)).

## III. <u>Discussion</u>

In her Statement of Errors, Plaintiff avers the ALJ failed to properly evaluate the prior administrative medical findings and opinions. (Doc. #9, *PageID* #s 1458−61; Doc. #12, *PageID* #s 1486−89). The Commissioner contends the ALJ properly evaluated the prior administrative medical findings and opinions. (Doc. #11, *PageID* #s 1473−82).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1)

"[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

An ALJ must "provide a coherent explanation of [his] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to

determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Warren I.*, 2021 WL 860506, at *8. The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M.*, 2025 WL 1948987, at *12 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp. 3d 900, at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

**A. State Agency Psychological Consultants**

First, Plaintiff alleges that "the ALJ failed to properly account for the state agency experts' social interaction limitation." (Doc. #8, *PageID* #1458). Further, Plaintiff avers the ALJ does not adequately account for the mental health experts' opinions that limit Plaintiff to "superficial" interactions with others; instead, the ALJ's RFC limits Plaintiff to "occasional interaction with the general public, co-workers, and supervisors." *Id.* (citing Doc. #7, *PageID* #42). Defendant argues that the ALJ properly considered and rejected prior administrative medical findings suggesting a limitation to "superficial" contact. (Doc. #11, *PageID* #1473).

Henry Conroe, M.D., who reviewed Plaintiff's claim at the initial level, opined that Plaintiff can perform simple routine tasks, follow simple 1-2 step instructions, maintain superficial relationships, and perform work that is static in nature where strict production quotas are not imposed. (Doc. #7, *PageID* #s 122−24). Regarding Plaintiff's social interaction limitations, Dr. Conroe found Plaintiff was moderately limited in her ability to interact appropriately with the general public and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at 123, 136. Dr. Conroe opined that Plaintiff did not otherwise

have significant social interaction limitations. *Id.* On reconsideration, Vicki Warren, Ph.D., adopted the same social functional limitations. *Id.* at 167−69. In reviewing these opinions, the ALJ found:

> State agency medical consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act. They are thus well qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to limitations (20 CFR 404.1527(f)). Although neither examining nor treating mental health providers, these experts are licensed psychologists with knowledge of the Social Security Administration's program and requirements. Their opinions are generally consistent with the medical evidence of record.

*Id.* at 51−52.

The ALJ further explained that he did not adopt the superficial limitation because the consultants did not define the term. (Doc. #7, *PageID* #52) ("While the undersigned agrees that the claimant has mental limitations, the undersigned finds that the reviewing psychological consultants did not provide their opined limitations in vocationally relevant terminology."). Instead, the ALJ "*refined* such limitations" to be "consistent with the overall evidence," specifically highlighting the evidence "showing stability with little mental health treatment," generally normal mental status examinations, and more. *Id.*

The term "superficial" is undefined; neither the state agency psychological consultants nor the Social Security Administration's policies or regulations define the term "superficial."[4] However, Social Security Ruling (SSR) 83-10 does provide definitions of terms and concepts that are frequently used in evaluating disability, including the term "occasional." SSR 83-10, 1983 SSR

[4] While Plaintiff provided the ALJ with a copy of an Appeals Council remand order defining "superficial interaction," the ALJ declined to exhibit the remand order "because [it] detailed [] specific medical evidence of record of an unrelated third party claimant noted within the Remand Order [that] the [ALJ] finds to be personally identifiable information." (Doc. #7, *PageID* #34).

LEXIS 30, 1983 WL 31251 (S.S.A. January 1, 1983). "Occasional" is defined as occurring "from very little up to one-third of the time." 1983 SSR LEXIS 30, [WL] at *5. In developing Plaintiff's RFC, and specifically in limiting Plaintiff to occasional interactions with others, ALJ Hartranft considered treatment notes that indicated Plaintiff was cooperative with normal mood, affect, speech, cognition, attention, and speech on several occasions. (Doc.#7, *PageID* #49) (citing Doc. #7, *PageID* #s 979, 1068, 1135, 1442). The ALJ also noted that Plaintiff, when attending her appointments, "presented as pleasant, alert and oriented, and in no acute distress." *Id.* Further, the ALJ considered that Plaintiff's mental status examinations "found her to have unremarkable or full mood and affect, unimpaired cognition, spontaneous, clear, and concise speech, and intact language and memory…." *Id.* (citing Doc. #7, *PageID* #s 701, 979, 981, 1135, 1430, 1442). The ALJ also referred back to his analysis of Plaintiff's mental health when determining that she did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* There, the ALJ found that

> While [Plaintiff] has reported she was not able to go out and enjoy the company of family or friends for a long period, she noted her inability was secondary to pain, weakness, and numbness rather than any mental health related problem(s) (Ex. 5E.5). In fact, she specifically denied any problems getting along with family, friends, neighbors, or others, and reported spending time socializing with others by telephone, text message, or video chat two or three times a week. She also claimed she got along okay with authority figures (Ex. 5E/5-6). Additionally, [Plaintiff] presented without any appreciable social difficulty at her psychological consultative examination (ex. 7F/5). Further, the evidence in the record, including her testimony at the hearing, shows that she was able to interact independently, appropriately, effectively, and on a sustain[ed] basis with other individuals. While [Plaintiff] testified to social anxiety, there is no indication that she has not been socially appropriate with treating or consulting sources. Moreover, she was also able to go shopping in stores for groceries and household needs without any noted

> social difficulty (Ex. 5E/4). Moreover, she presented to the hearing as polite and cooperative.

*Id.* at 40. Finally, the ALJ cited to Plaintiff's "typical and/or routine activities of daily living and activity level," finding them inconsistent with her complaints of symptoms and limitations. *Id.* at 50.

An ALJ is "not required to adopt [a] consultants' opinion wholesale." *Tiffany J. v. Comm'r of Soc. Sec.*, No. 2:24-CV-04106, 2025 U.S. Dist. LEXIS 265108, at *18 (S.D. Ohio Dec. 23, 2025) (Gentry, M.J.), *adopted by* 2026 U.S. Dist. LEXIS 55185 (S.D. Ohio Mar. 17, 2026) (Sargus, D.J.). Further, an ALJ is not required to adopt a medical opinion verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Rather, "[t]he issue is whether the ALJ explained the basis for the RFC determination." *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5315, 2023 WL 1857822, at *24 (S.D. Ohio Feb. 9, 2023) (Litkovitz, M.J.), adopted by 2023 WL 2692415 (S.D. Ohio, Mar. 29, 2023) (Graham, D.J.). For the reasons explained above, ALJ Hartranft has done so here. Therefore, the undersigned recommends that Plaintiff's first statement of error be denied.

**B. Consultative Expert Ricardo Romero, M.D.**

Next, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions provided by consultative expert Robert Romero, M.D. (Doc. #9, *PageID* # 1463). Defendant contends that ALJ Hartranft properly considered Dr. Romero's opinion for supportability and

consistency and that substantial evidence supports the ALJ's persuasiveness findings. (Doc. #11, *PageID* #s 1178–83).

Dr. Romero examined Plaintiff on November 16, 2022. (Doc. #7, *PageID* #s 906−14). Dr. Romero's report details his objective findings from that report, namely:

> Thoracic and lumbar spines are tender to palpation. She is unable to perform range of motion. The right hand is weak and slow in motion. She has decreased grasp. The right wrist has decreased palmar flexion and dorsiflexion. Elbow and right arm has difficulty with supination and pronation, very slow and can't complete the normal range of motion. Her shoulders are decreased range of motion, particularly in the right to about 25%, left at about 50%. The entire right lower leg is palpated from hip to knee to foot and has decreased sensation. She is unable to perform range of motion to the hips. Gait is a limp but she also has a right foot dragging. Her plantar and dorsiflexion on the right is severely decreased. The entire knee to the leg is numb to touch. She is unable to perform straight leg raises. She can oppose digits with her left but very difficult for the right and also difficult to make a fist. This is secondary to her CVA.

*Id.* 908. Dr. Romero also detailed Plaintiff's medical history, which he calls the "Medical Source Statement." *Id.* Plaintiff appears to be Dr. Romero's primary source for this section of his report. *Id.* (*see e.g.,* "She *says* that she can sit for about 15-30 minutes, stand for 15-30 minutes."). After examining Plaintiff and discussing her medical history, Dr. Romero opined that "[t]here would be no way that she would be able to sustain her previous work or any type of physical work because of her limitations, particularly sitting, standing and almost disuse of the right side of her body." *Id.* Dr. Romero concluded that it is his belief that Plaintiff "will probably never be able to work," stating that she was also "told this by her primary care doctor and neurologist." *Id.*

**i. Supportability and Consistency**

When reviewing an ALJ's findings, the opinion should be read "as a whole." *Perkins v. Comm'r of Soc. Sec.*, No. 1:20-CV-554, 2021 WL 3722772, at *7 (S.D. Ohio Aug. 23, 2021)

("Reading the opinion as a whole, the ALJ fairly described the lack of supportability…"). Additionally, the ALJ need only articulate the reasons for the findings and conclusions that he makes in building an "accurate and logical bridge between the evidence and his conclusion." *Amber S. v. Comm'r of the SSA*, No. 2:22-CV-2240, 2023 WL 6276059, at *12 (Silvain, M.J.) (citing *Fleischer v. Astrue*, 774 F.Supp. 2d 875, 877 (N.D. Ohio 2011). Again, the ALJ has done so here. (Doc. #7, *PageID* #s 50–51). In considering Dr. Romero's findings, ALJ Hartranft expressly contemplates consistency, finding that "Dr. Romero's opinion is not *consistent* with [Plaintiff]'s reported abilities and/or activities of daily living…" *Id.* at 51 (emphasis added). The ALJ also expressly contemplates supportability, finding that "the evidentiary record fails to *support* [Plaintiff]'s claim" that she would never be able to work. *Id.* (emphasis added).

The ALJ further engages in a discussion on supportability by exploring the sources of information Dr. Romero relied on when formulating his opinion, specifically on his one-on-one examination of Plaintiff and his dependence on Plaintiff's subjective reports. *Id.* However, the ALJ also notes that Dr. Romero's opinions are presented absent a function-by-function assessment and appear "highly dependent upon [Plaintiff]'s subjective reports of symptoms and limitations and reported conclusions of her treatment providers during the examination," stating in the next sentence that he finds Plaintiff "unpersuasive as a reporter of her symptoms and limitations." *Id.* More simply, although Dr. Romero examined Plaintiff on a one-on-one basis and had the opportunity to observe, interview, and objectively evaluate Plaintiff, Dr. Romero's opinion lacks a function-by-function assessment of Plaintiff's physical functional limitations and did not indicate how his examination findings would affect Plaintiff's ability to function in a work setting, apart from his penultimate conclusion that she would likely never be able to work again. *Id.* (referencing

Doc. #7, *PageID* #906–10). This leaves Dr. Romero's findings unsupported and unpersuasive. *Id.*; (Doc. #9, *PageID* # 1463). Moreover, the ALJ found that Dr. Romero did not have access to all of the medical evidence in the record and that the evidentiary record fails to support Plaintiff's claim her that primary care physician and neurologist had said she would probably never be able to work, which was noted in Dr. Romero's assessment. (Doc. #7, *PageID* #51) (referencing Doc. #7, *PageID* #908).

The ALJ has met the minimum level of articulation necessary to avoid frustrating the court's ability to determine whether the ALJ's findings are sufficiently supported by substantial evidence. *See Sasha M. v. Comm'r*, No. 2:22-cv-2101, 2023 WL 1793536, at *6 (S.D. Ohio Feb. 7, 2023) (Jolson, M.J.); *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021); *See Ison v. Comm'r of Soc. Sec.*, No. 2:16-CV-464, 2017 WL 4124586, at *13 (S.D. Ohio Sept. 18, 2017) (Marbley, D.J.) (explaining that "[t]he Sixth Circuit does not require remand where an ALJ provides minimal reasoning at step three of the five-step inquiry.") (internal citation omitted). Therefore, the undersigned recommends that the Court find that ALJ Adkins did not err in his treatment of Dr. Romero's opinion and the ALJ's decision adequately contemplates the factors of supportability and consistency.

**ii. Supported by Substantial Evidence**

Plaintiff further avers that "[t]he ALJ rejected Dr. Romero's opinions because they were supposedly based on subjective complaints due to a lack of objective evidence in his reports which is clearly not the case." (Doc. #7, *PageID* #1467). The undersigned finds this perspective not fully accurate.

As discussed above, the ALJ found Dr. Romero's opinion to be inconsistent with the evidence of record and unsupported by relevant objective medical evidence and explanations presented by a medical source. (Doc. #7, *PageID* #51). The ALJ noted that Dr. Romero examined Plaintiff and "observe[d], interview[ed], and *objectively* evaluate[d] [Plaintiff." *Id.* The ALJ also noted Dr. Romero's indication that Plaintiff experiences "severe problems" as a result of her "cerebral vascular accident," including chronic pain. *Id.* The ALJ takes issue with Dr. Romero's lack of a function-by-function assessment that could have better explained the nature and degree of Plaintiff's limitations as well as his penultimate conclusion that Plaintiff would likely never be able to work again. *Id.* (referencing Doc. #7, *PageID* #908). Further, the ALJ emphasizes that absent this function-by-function assessment, Dr. Romero fails to explain his opinion that Plaintiff cannot and will not be able to work using relevant objective evidence from a medical source, instead relying heavily—but not solely—on Plaintiff's subject reports, which he does not find persuasive, as discussed above. *Id.* While Dr. Romero recounts the findings of his objective medical examination, he does not use those findings to explain why or how Plaintiff is limited or unable to perform work. *Id.* Therefore, substantial evidence supports the ALJ's evaluations of these opinions, and the ALJ adequately explained his evaluation of these opinions. Under these circumstances, the undersigned recommends that this Court affirm the ALJ's findings.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be **AFFIRMED**; and
2. The case be terminated on the Court's docket.

July 29, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).